IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MCGONIGAL, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| SEARS ROEBUCK AND CO., | : | NO. 07-CV-4115 |
| Defendant | : | |

MEMORANDUM OPINION

TIMOTHY R. RICE                                                                                       March 13, 2009
U.S. MAGISTRATE JUDGE

      Plaintiff Michael McGonigal has filed motions in limine to preclude defendant Sears Roebuck & Co. ("Sears") from (1) admitting documents regarding its quality control/pre-sale testing and inspection procedures into evidence; (2) arguing, implying or offering into evidence, or offering any testimony that McGonigal misused the lawn tractor; and (3) offering the opinions of experts Dan Neilson and Gerald Coons. At oral argument on March 10, 2009, Sears withdrew its claims McGonigal assumed the risk of injury, engaged in highly reckless conduct, and spoliated the evidence. For the following reasons, I deny McGonigal's motion in limine.

I.    Background

      On September 14, 2005, McGonigal suffered injuries to his right index finger and right middle finger while using a Craftsman riding lawn tractor he purchased from Sears in Newark, Delaware. See Plaintiffs' Motion in Limine at ¶¶ 1, 2, 16, McGonigal v. Sears Roebuck & Co., No. 07-4115 (E.D. Pa. filed Feb. 9, 2009) [hereinafter "Plaintiffs' Motion"]. McGonigal had started to mow his lawn when he noticed the tractor was not picking up the grass clippings and discharging into the grass catcher. Id. at ¶ 9. According to McGonigal, before dismounting the

tractor, he depressed the clutch/brake pedal, stopped the tractor, placed the traction drive in neutral, engaged the emergency brake lever, and disengaged the attachment clutch lever. Id. at ¶ 10. These steps, he believed, stopped the mower blades. McGonigal walked to the right side of the tractor and reached down to clear a debris clog when his fingers came into contact with the mower blades, which he did not realize were still rotating. Id. at ¶¶ 12, 14. As a result, the tip of McGonigal's right index finger was amputated by the rotating blades. Id. at ¶ 16. Both parties agree the tractor was designed so that the rotating cutting blades would stop within five seconds of the user disengaging the attachment clutch lever and when the operator dismounted the tractor. Id. at ¶ 15; Defendant's Pretrial Memorandum at 3, McGonigal v. Sears Roebuck & Co., No. 07-4115 (E.D. Pa. filed Feb. 16, 2009).

McGonigal has brought a strict liability action against Sears alleging the tractor was defective due to overtightening of the pivot bolt, which caused the mower blades to fail to stop within five seconds, proximately causing McGonigal's injuries.

II.     Discussion

    A.     Quality Control/Pre-sale Testing and Inspection Procedures

McGonigal seeks to preclude Sears from admitting documents regarding its quality control/pre-sale testing and inspection procedures. See Plaintiffs' Motion at ¶¶ 21-26. The procedures concern whether an allegedly defective tractor caused McGonigal's injury. McGonigal argues Sears will use these documents to demonstrate Sears' due care, which is irrelevant and inadmissible in a strict liability case. See id. at ¶¶ 23, 24. In addition, McGonigal seeks to preclude Sears from arguing it exercised due care in manufacturing or selling the lawn tractor because it would raise negligence concepts, id. and would mislead and confuse the jury,

see id. at ¶ 25.  Sears contends the documents are admissible to establish the condition of the tractor when it left its possession.  See Defendant Sears Roebuck and Co.'s Opposition to Plaintiffs' Motion in Limine at 1, McGonigal v. Sears Roebuck & Co., No. 07-4115 (E.D. Pa. filed Feb. 16, 2009) [hereinafter "Defendant's Response"].  At oral argument, Sears stated two witnesses will testify as to the testing and inspection procedures performed on every tractor before it leaves Sears' control.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  The pivotal trial issue will be whether the tractor's blade shutoff features were rendered inoperable by a manufacturing defect in the pivot bolt or by consumer error in failing to remove accumulated debris.  Because jurisdiction is based on diversity of citizenship, Pennsylvania law applies.

Sears' quality control/pre-sale testing and inspection procedures are relevant to the issue whether accumulated mud and debris, and not a product defect, restricted the mower deck brake arms.  See Defendant's Pre-trial Memorandum at 8; see e.g., Jeng v. Witters, 452 F. Supp. 1349, 1363 (M.D. Pa. 1978) (motion picture depicting developmental testing on door latch was "relevant and admissible on the issue of whether the 1963 latch was defective and unreasonably dangerous"); Bialek v. Pittsburgh Brewing Co., 242 A.2d 231, 235 (Pa. 1968) (evidence of manufacturer's bottling process in a strict products liability action constitutes evidence showing that when the bottle left the control of the manufacturer, "it was not defective or unreasonably dangerous, an issue clearly relevant under" § 402A).  Here, the documents, coupled with witness

3

testimony, make a fact of consequence, i.e., whether McGongial's lawn tractor was defective when it left Sears' control, more or less probable than without the evidence. Fed. R. Evid. 401.

  B. Misuse

McGonigal seeks to preclude Sears from arguing, implying or offering into evidence or offering any testimony that McGonigal misused the lawn tractor. Sears presents two arguments regarding misuse. First, it contends McGonigal's failure to maintain the lawn tractor constituted misuse and was the sole cause of his injuries. Second, it argues McGonigal's act of placing his hand underneath the tractor's blade deck to clear a clog, in contravention of warning labels, was an unintended use.

Evidence of a plaintiff's conduct is admissible in a strict liability action to disprove a claim that a product's defect caused an injury is limited. Such conduct is admissible only to prove: (1) assumption of the risk; (2) misuse of the product; or (3) highly reckless or extraordinarily unforeseeable conduct. See Nesitt v. Sears, Roebuck & Co., 415 F. Supp.2d 530, 544 (E.D. Pa. 2005) (Davis, J.); Kramer v. Raymond Corp., 840 F. Supp. 333, 334 (E.D. Pa. 1993) (Pollak, J.) (citing Dillinger v. Caterpillar, Inc., 959 F.2d 430, 445-46 (3d Cir. 1995)). Otherwise, a plaintiff's contributory negligence is inadmissible "either to reduce the plaintiff's recovery or as a defense to liability." See Kramer, 840 F. Supp. At 334 (citing McCown v. International Harvester Co., 342 A.2d 381 (Pa. 1975)).

In a strict products liability action under Pennsylvania law, evidence of misuse is generally admissible to defeat causation. See Moyer v. United Dominion Industries, Inc., 473 F.3d 532, 542 (3d Cir. 2006) (citing Dillinger, 959 F.2d at 445; Clark v. Bil-Jax, Inc., 763 A.2d 920, 923 (Pa. Super. Ct. 2000); Charlton v. Toyota Indus. Equip., 714 A.2d 1043, 1047 (Pa.

Super. Ct. 1998)).  Evidence of misuse is admissible, however, "only if the misuse was the sole cause of the injury."  See Moyer, 473 F.3d at 543 (citing Madonna v. Harley Davidson, Inc., 708 A.2d 507, 509 (Pa. Super. Ct. 1998) ("As [several Pennsylvania cases demonstrate, a user's negligence is not relevant if the product defect contributed in any way to the harm.  However, where the defense offers evidence to establish that the accident was solely the result of the user's conduct, and not related in any way with a product defect, it is relevant and admissible for the purpose of proving causation.")).

      Sears' evidence of McGonigal's misuse should be admitted if it has any tendency to show McGonigal's injuries were caused solely by misuse, rather than by a manufacturing defect.  See Moyer, 473 F.3d at 543.  Sears contends McGonigal's failure to maintain the tractor by "allowing mud and debris to accumulate on the lawn tractor's mower deck," see Defendant's Pretrial Memorandum at 7, was the sole cause of his injuries, and not any alleged product defect.  At oral argument, Sears explained it will support its misuse argument with expert testimony to establish the accumulation of mud and debris on the tractor was the sole cause of McGonigal's injuries.  Because this evidence has the tendency to demonstrate an alternate cause for McGonigal's injuries, it is relevant under Rule 401 and, therefore, is admissible.  See Moyer, 473 F.3d at 544-45.

      Next, Sears argues McGonigal's act of "placing his hand under the mower deck of the lawn tractor while the blades of the mower were rotating was not an intended use" and, therefore, it cannot be liable for McGonigal's injuries.  See Defendant's Response at 3.  It cited product warnings on the tractor to support its position.  A product is defective if it is unsafe for its intended use.  Azzarello v. Black Bro. Co., 391 A.2d 1020 (Pa. 1978).  Courts have debated the

precise contours of what Pennsylvania law requires to determine a product's intended use, particularly the role of foreseeablility.  Compare D'Angelo v. ADS Machinery Corp., 128 Fed. Appx. 253, 255 (3d Cir. 2005) ("Evidence of a plaintiff's abnormal use is permitted in certain circumstances under Pennsylvania law, in instances where the alleged misuse may reasonably be found to have been extraordinary, highly reckless, and not reasonably foreseeable to the manufacturer."), Parks v. AlliedSignal, Inc., 113 F.3d 1327, 1331 (3d Cir. 1997) ("The concept of foreseeability is relevant to strict products liability cases for the purpose of determining whether the use that was made of a product at the time of the accident was one that the manufacturer could have reasonably anticipated."), Metzgar v. Playskool, Inc., 30 F.3d 459, 465 (3d Cir. 1994) ("[A]lthough foreseeability is not a term that should be associated with strict liability, the concept, to the extent it implies an objective test, is not entierly foreign to a strict liability analysis."), and Burch v. Sears, Roebuck & Co., 467 A.2d 615, 619 (Pa. Super. Ct. 1983) ("An allegedly abonrmal use will negate liability, however, only if it was not reasonably foreseeable by the seller."), with U.S. Airways, Inc. v. Elliott Equip. Co., Inc., 2008 WL 4461847, at *9 (E.D. Pa. Sept. 29, 2008) (O'Neill, J.) ("No strict liability exists for non-intended uses even if foreseeable."), Clevenger v. CNH America, LLC, 2008 WL 2383076, at *3 (M.D. Pa. June 9, 2008) (a product's intended use is not any foreseeable use, but rather manufacturer's actual, intended use of product), and  Pa. Dept. of Gen. Servs. v. U.S. Mineral Prods., 898 A.2d 590, 601 (Pa. 2006) ("[A] manufacturer can be deemed liable only for harm that occurs in connection with a product's intended use by an intended user; the general rule is that there is no strict liability in Pennsylvania relative to non-intended uses even where foreseeable by a manufacturer.").

In <u>Burch</u>, 467 A.2d at 617, the plaintiff injured his fingers when he attempted to unclog a lawn mower by turning the mower on its side and reaching in to remove clumps of grass. The court held "that a user might place a hand near apparently stopped machinery or parts has been held to be sufficiently foreseeable to sellers" and, therefore, does not constitute an "abnormal use" of the product. See <u>id.</u> at 619; cf. <u>U.S. Mineral Prods.</u>, 898 A.2d at 604 (incineration of building products is not intended use by manufacturer); <u>Bartkewich v. Billinger</u>, 247 A.2d 603, 605 (Pa. 1968) (placing a hand into operating glass breaking machine constituted abnormal use). Unlike the plaintiffs in <u>U.S. Mineral Products.</u> and <u>Burtkewich</u>, McGonigal's use of the tractor was not abnormal and thus falls squarely under <u>Burch</u>.

As in <u>Burch</u>, McGonigal will state he believed the blades had been disengaged and had stopped rotating. See Plaintiffs' Motion at ¶ 4. This is not an instance where McGonigal knowingly misused the product by inserting his hand into the mower while it was operating. Rather, McGonigal claims he took specific steps, apart from turning the tractor off, to disengage the mower blades, i.e., he "depressed the clutch/brake petal, stopped the lawn tractor, placed the traction drive in neutral, engaged the emergency brake lever and disengaged the attachment clutch lever" before dismounting the lawn tractor. See Plaintiffs' Motion at ¶ 10.

Sears claims <u>Davis v. Burdine</u>, 690 A.2d 186 (Pa. 1997) and <u>Phillips v. Cricket Lighters</u>, 841 A.2d 1000 (Pa. 2003) limit <u>Burch</u>. I disagree. <u>Davis</u> was a strict liability action for failure to warn, which involved substantial post-sale alteration to a product. 690 A.2d at 190. The court questioned whether a manufacturer could have anticipated a user removing a product's safety device and, therefore, been required to provide additional warnings. <u>Id.</u> The product alteration in <u>Davis</u>, however, fails to support the intended use issue Sears raises here. Further, in <u>Phillips</u>,

7

the court examined the intended user doctrine and held "in a strict liability design defect claim, the plaintiff must establish that the product was unsafe for its intended user."  841 A.2d at 1007.  The court found a two-year-old child was not the intended user of a butane lighter and, therefore, rejected an action in strict liability for failing to childproof the lighter.  Id. at 1007-08.  Although the court reaffirmed "negligence concepts have no place in [Pennsylvania] strict liability law," the court acknowledged it had "muddied the waters at times with the careless use of negligence terms in the strict liability arena,"[1] yet found it "imprudent . . . to wholesale reverse all strict liability decisions which utilize negligence terms."  Id. at 1007.  Although Burch uses foreseeability concepts in deciding when an abnormal use of a product will defeat liability, it has held on almost identical facts that the conduct in which McGonigal engaged was not abnormal under Pennsylvania law.  See Burch, 467 A.2d at 452.  Moreover, McGonigal, as a homeowner using the tractor to cut his lawn, is clearly the intended user of the product.  See Phillips, 841 A.2d at 1007.  His belief that he was unclogging a mower not in operation was not an unintended use under Pennsylvania law.  Thus, Sears' claim fails.

      C.      Expert Testimony

McGonigal also seeks to preclude Sears from offering the opinions of its experts, Gerald Coons and Dan Nielsen, because they are speculative.  See Plaintiffs' Motion at ¶ 109.  Coons will opine "[t]he build-up of the dirt, mud, moisture, and debris dried and caked up on the deck, restricted the movement of the clutching idler arm in the disengage position," thus "preventing the brake arms from moving into the brake position."  See Excerpt of Coons Report, Plaintiffs' Motion, at Attachment 3.  Nielsen will opine "[a]t the time of the accident[,] excessive and heavy

---

[1] The court cited the Davis v. Berwind as an example of "mixing negligence terms into a strict liability analysis."  See id. at 1007.

debris on the mower restricted the movement of the clutching system and lengthened the blade stop times." See Excerpt of Nielsen Report, Plaintiffs' Motion, at Attachment 3. McGonigal argues their opinions are not based on the condition of the tractor at or near the time of the accident, and are speculative because they inspected the tractor almost three years after McGonigal's injury. See Plaintiffs' Motion at ¶ 67.

McGonigal's motion requires consideration of the requirements for expert testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). Daubert is a rule of flexibility, liberally construed to allow admissibility of expert testimony. Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008). Exclusion of expert testimony is the exception rather than the rule because "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Fed. R. Evid. 702 (advisory committee notes) (citing Daubert, 509 U.S. at 595).

The party offering an expert must establish by a preponderance of the evidence the qualifications of the expert witness and the expert opinion's compliance with Federal Rule of Evidence 702. See Daubert, 509 U.S. at 592-93 (citing Fed. R. Evid. 104(a)); Robinson v. Hartzell Propeller, Inc., 2007 WL 2571447, at *4 (E.D. Pa. Aug. 30, 2007) (DuBois, J) (citing In re TMI Litig., 193 F.3d 613, 663 (3d Cir. 1999)). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.  Rule 702 has "'a liberal policy of admissibility.'"  Pineda, 520 F.3d at 243 (quoting Kannankeril v. Terminix Int'l. Inc., 128 F.3d 802, 806 (3d Cir. 1997)).  However, an expert must satisfy the three "restrictions on expert testimony: qualification, reliability and fit." Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citing In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 741-43 (3d Cir. 1994) ("Paoli II")).

      McGonigal does not challenge the experts' qualifications or the fit of their testimony. Coons and Nielson's opinions are reliable because they are based on "good grounds."  Based on the excerpt of Coons' report filed by McGonigal, it appears Coons based his opinion on tests and inspections performed on the tractor, information provided by McGonigal that he had recently cleaned the tractor and had not operated it for two years, and his twenty-eight years experience in the outdoor power equipment industry.  Id.; compare Trustees of Chicago Painters and Decorators Pension v. Royal Int'l Drywall and Decorating, 493 F.3d 782, 787-88 (7th Cir.2007) (experts were qualified to offer opinions on rate of drywall taping, given their specialized knowledge of drywall installation based on extensive practical experience), with United States v. Chang, 207 F.3d 1169, 1172-73 (9th Cir.2000) ( "extremely qualified" expert in international finance was properly precluded from testifying about validity of certificate in question, because identification of counterfeit securities was beyond witness's expertise).  Similarly, based on the excerpt of Nielson's opinions filed by McGonigal, it appears Nielson based his opinion on tests, inspections, and repairs performed on the tractor, and his thirty years experience in the lawn tractor industry.  See id.

      Coons and Nielson's qualifications assist in establishing the reliability of their methodology.  See id. (qualifications listed as a factor to determine reliability); Robinson, 2007

WL 2571447, at *4 n. 7 (qualifications may enhance the reliability of expert testimony). Coons' curriculum vitae lists his vast professional experience, training, and litigation experience in engineering, design, and manufacturing of tractors. Nielson's curriculum vitae lists his vast professional experience, training, certifications in engineering, design, and manufacturing of mowers and equipment, and his professional membership in three engineering organizations.

Such expertise justifies the reliability of Coons and Nielson's methodology. See, e.g., Schneider, 320 F.3d at 406 (doctor's experience "renders his testimony reliable [and] demonstrates that his testimony is based on good grounds."); Keller v. Feasterville Family Health Care Ctr., 557 F.Supp.2d 671, 677 (E.D.Pa.2008) (doctors extensive professional experience justified reliability of his methodology); Lillis v. Lehigh Valley Hosp. Inc., 1999 WL 718231, at *7 (F.D.Pa. Sept. 3, 1999) (Van Antwerpen, J.) (testimony reliable because based on sound methods of expert's knowledge of the policy standards through his clinical experience and serving on committees to draft such policies). Whether their opinions comport with prevailing lawn tractor manufacturing practices and standards will be easily probed at trial.

Thus, under Rule 702's flexible inquiry, I find Coons and Nielson's opinions admissible because the process used in formulating and applying their opinions is reliable. See Pineda, 520 F.3d at 247. I need not find their methodology has the best foundation or is correct. See id.; Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3d Cir. 2000). Any weaknesses or inadequacies McGonigal believes exist with the facts and assumptions of Coons and Nielson's conclusions can be highlighted through effective cross-examination. See Keller, 557 F.Supp.2d at 678 (defects in doctor's methodology can be challenged on cross-examination); Mitchell, 365 F.3d at 244; Lee v.

Taekwondo Union, 2006 WL 5240611, at *4 (D. Haw. Jan. 26, 2006) (expert's assumption of a person's work-life expectancy is admissible but subject to vigorous cross-examination).

    D.    <u>Withdrawn and Meritless Arguments</u>

At oral argument, Defendant Sears withdrew any argument McGonigal assumed the risk of injury, engaged in highly reckless conduct, and spoliated the evidence. In any event, its claims lack merit. <u>See</u> <u>Schmid v. Milwaukee Elec. Tool Corp.</u>, 13 F.3d 76, 78 (3d Cir. 1994) (To determine the proper remedy for spoliation of evidence, a court must consider (1) the fault of the party who destroyed the evidence; (2) the prejudice suffered by the opposing party; and (3) whether a lesser sanction will avoid substantial unfairness); <u>Kramer v. Raymond Corp.</u>, 840 F. Supp. 333, 335 (E.D. Pa. 1993) (Pollak, J.) (defendant has the burden of showing the injured party was subjectively aware of the defect and willingly chose to encounter it) (citing <u>Ellis v. Chicago Bridge & Iron Co.</u>, 545 A.2d 906, 915 n. 17 (1988)); <u>Clark v. Bil-Jax, Inc.</u>, 763 A.2d 920, 925 (Pa. Super. Ct. 2000) (Reckless behavior occurs when "the plaintiff would have been injured despite the curing of the defect, or [the behavior] is so extraordinary and unforeseeable as to constitute a superseding cause.").

An appropriate Order follows.