IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MCGONIGAL, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| SEARS ROEBUCK AND CO., | : | NO. 07-CV-4115 |
| Defendant | : | |

MEMORANDUM OPINION

TIMOTHY R. RICE                                                                                   July 16, 2009
U.S. MAGISTRATE JUDGE

    The role of negligence concepts in strict liability doctrine in Pennsylvania features "numerous unsettled issues of law." Bugosh v. I.U. N. Am., Inc., 971 A.2d 1228, 1234 (Pa. 2009) (Saylor, J., dissenting, joined by Chief Justice Castille). Although courts note "negligence concepts should not be imported into strict liability law," Phillips v. Cricket Lighters, 841 A.2d 1000, 1006 (Pa. 2003); Pa. Dept. of Gen. Servs. v. U.S. Mineral Prods. Co., 898 A.2d 590, 600-01 (Pa. 2006), exceptions to this rule remain, U.S. Mineral Prods. Co., 898 A.2d at 601 n.10, and negligence concepts continue to pervade some aspects of strict liability law, see Bugosh, 971 A.2d at 1230 (citing Phillips v. Cricket Lighters, 841 A.2d 1000, 1012 (Pa. 2003) (Saylor, J., concurring, joined by Justices Castille and Eakin)); Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 56-57 (3d Cir. 2009); see also Phillips, 841 A.2d at 1006-07 (although negligence concepts do not have a place in strict liability doctrine, the Court has "muddied the waters").

    Plaintiff Michael McGonigal claims Defendant Sears, Roebuck and Co. ("Sears") sold him a defective lawn tractor. See Plaintiff's Pretrial Memorandum at 3, McGonigal v. Sears, Roebuck and Co., No. 07-4115 (E.D. Pa. filed Feb. 9, 2009). Sears alleges the lawn tractor was

not defective when sold, rather, McGonigal substantially altered the product by allowing the tractor to become clogged with debris and improperly joining the upper and lower baggage chutes, causing it to malfunction.  See Defendant's Pre-Trial Memorandum at 3-4, McGonigal v. Sears, Roebuck and Co., No. 07-4115 (E.D. Pa. filed Feb. 16, 2009).  McGonigal alleges substantial change or alteration is not a valid defense if the change was foreseeable to Sears.  See Plaintiff's Pretrial Memorandum at 8.

Sears seeks reconsideration of the following proposed jury instruction:

> A seller is responsible only for defects that exist at the time the product leaves his or her control. The seller is not liable for defective conditions created by substantial changes in the product occurring after the product has been sold. *There is, however, an important qualification to this rule. If you do find defective conditions were created by substantial changes in the product occurring after it was sold, that finding would not, in itself, relieve the seller of liability. Rather, the seller would still be liable, in that circumstance, unless you also find the changes were ones that could not reasonably have been foreseen or expected by the seller. That is because a seller's responsibility, under our law, extends to all dangers that result from foreseeable changes to the product.*

See Motion for Reconsideration of Ruling on Defendant's Proposed Amendments to June 23, 2009 Draft Jury Instructions at ¶¶ 6-9, McGonigal v. Sears, Roebuck and Co., No. 07-4115 (E.D. Pa. filed July 9, 2009) [hereinafter Reconsideration Motion]; Pa. Mod. Civ. Jury Instr. 8.08 (2003) (contested provision in italics).  For the following reasons, this motion is denied.

The jury instruction is based on Davis v. Berwind Corp., 690 A.2d 186, 190 (Pa. 1997), which reasoned if the product "reached the consumer with a substantial change, the question becomes whether the manufacturer could have reasonably expected or foreseen such an alteration of its product."  Id. (quoting Eck v. Powermatic Houdaille, 527 A.2d 1012 (Pa. 1987)); see Pa. Model Civ. Jury Instr. 8.08, subcommittee note.

Sears argues the Pennsylvania Supreme Court in Phillips[1] subsequently rejected the language from Davis. It claims:

> While [the Pennsylvania Supreme Court has] remained steadfast in [their] proclamations that negligence concepts should not be imported into strict liability law, [it has] muddied the waters at times with the careless use of negligence terms in the strict liability arena. One example of this mixing of negligence terms into a strict liability analysis occurs in Davis v. Berwind Corp., 547 Pa. 260, 690 A.2d 186 (1997). In that matter, one of the questions presented to [the Court] was whether the manufacturer could be held strictly liable where it had manufactured a safe product, but the product was rendered unsafe by subsequent changes. [It] reasoned that the manufacturer may be held liable, even though it did not make the subsequent change, if the "manufacturer could have reasonably expected or foreseen such an alteration of its product." Id. at 190. Clearly, such a negligence-based test, which focuses on the due care exercised by the manufacturer, is in tension with [the Court's] firm and repeated pronouncements that negligence concepts have no place in strict liability law.

See Reconsideration Motion at ¶ 7 (quoting Phillips, 841 A.2d at 1006-07). Sears also relies on U.S. Mineral Prods. Co., 898 A.2d at 600-01, which reasoned:

> [A] manufacturer can be deemed liable only for harm that occurs in connection with a product's intended use by an intended user; the general rule is that there is no strict liability in Pennsylvania relative to non-intended uses even where foreseeable by a manufacturer. The Court has also construed the intended use criterion strictly, holding that foreseeable misuse of a product will not support a strict liability claim.

U.S. Mineral Prods. Co., 898 A.2d at 600-01 (internal citations omitted).

---

[1] Six Justices decided Phillips. Chief Justice Cappy authored the majority opinion, but only Justice Newman expressly joined the portion discussing the strict liability claim and stating negligence concepts have no place in strict liability. See Phillips, 841 A.2d at 1023; see also Berrier, 563 F.3d at 57 n.28. Justice Saylor filed a concurring opinion joined by Justices Castille and Eakin. See Phillips, 841 A.2d at 1012-23. Justice Newman filed a concurring and dissenting opinion, supporting Justice Cappy's opinion regarding strict liability, but disagreeing with the majority regarding the negligence cause of action. See id. at 1023-25. Justice Nigro concurred only in result but did not write separately. See id. at 1012.

Phillips and U.S. Mineral Products Co., however, are internally inconsistent. Although the Phillips court stated Davis was "in tension with [the Supreme Court's] firm and repeated pronouncements that negligence concepts have no place in strict liability law," it nevertheless cautioned "it would be imprudent . . . to wholesale reverse all strict liability decisions which utilize negligence terms." Phillips, 841 A.2d at 1007; see Phillips, 841 A.2d at 1012 (Saylor, J., concurring, joined by Justices Castille and Eakin) (the majority "decline[d] to disavow" that "foreseeability, a conception firmly rooted in negligence theory, is assessed in strict liability cases involving certain types of product alterations"). Similarly, in U.S. Minerals Prods. Co., the court stated "the general rule is that there is no strict liability in Pennsylvania relative to non-intended uses even where foreseeable by a manufacturer," but noted "[t]he [Pennsylvania Supreme Court] has recognized that there are limited, targeted exceptions to this approach," including Davis. See U.S. Minerals Prods. Co., 898 A.2d at 600, 601 n.10. The court in U.S. Minerals Prods. Co. explained "the prevailing consensus in Phillips was that there would be no further expansions under existing strict liability doctrine." Id.

Bugosh, 971 A.2d at 1229, recently afforded the Supreme Court the opportunity to clarify strict liability law, but the appeal was dismissed "as having been improvidently granted."[2] In a dissent in Bugosh, Justice Saylor noted there exists "a serious misalignment between the

---

[2] The question presented was "whether, in product liability actions in Pennsylvania, to move from Section 402A of the Second Restatement of Torts: Product Liability, thus substantially altering the liability scheme grounded on the seminal decision in Azzarello v. Black Bros. Co., 391 A.2d 1020 (Pa. 1978)." Bugosh, 971 A.2d at 1229. Justice Saylor filed a dissenting opinion, joined by Chief Justice Castille, stating because he believed "Azzarello is severely deficient, particularly when measured against developed understanding and experience, and necessary adjustments are long overdue," he could not support a decision to "permit another opportunity to go by the wayside." Id. (Saylor, J., dissenting).

description of [the Supreme Court's] strict liability doctrine and its actual operation." Bugosh, 971 A.2d at 1234. As Justice Saylor explained, "the core problem in the application of prevailing Pennsylvania law lies in the insistence on maintaining a doctrinal assertion that there is no negligence in strict liability, when, functionally, the law of 'strict' products liability is infused with negligence concepts." Id. at 1233.

Courts declaring that negligence concepts have no place in strict liability law reason that the product, not the manufacturer's conduct, is on trial. Phillips, 841 A.2d at 1007. However, in design defect cases, the "distinction between the character of a product and the conduct of the manufacturer in designing it is tenuous." Bugosh, 871 A.2d at 1230; see also Phillips, 841 A.2d at 1015; Henderson and Twerski, Achieving Consensus on Defect Product Design, 83 Cornell L. Rev. 867, 919 (May 1998) ("to condemn a design for being unreasonably dangerous is inescapably to condemn the designer for having been negligent"). Although more easily justified in manufacturing defect cases, the "categorical divide between strict-liability and negligence concepts" does not easily transfer to design and warning defect cases,[3] Bugosh, 971 A.2d at 1234 (citing Cronin v. J.B.E. Olson Corp., 501 P.2d 1153, 1161 (Ca. 1972) and Prentis v. Yale Mfg. Co., 365 N.W.2d 176, 181-82 (Mich. 1984)) (discussing the development of product liability law). In manufacturing defect cases, although a defect affected the product's safety, the plaintiff faces "insurmountable obstacles" to prove the manufacturer did not exercise due care. See Phillips, 841 A.2d at 1013. In design and warning defect cases, however, limiting principles are

---

[3] It appears McGonigal claims Sears is liable under all three strict liability theories. See Civil Action Complaint at ¶ 27; Pre-Trial Memorandum.

required "to contain the liability of product manufacturers and suppliers" because it is impossible to design a product "incapable of contributing to human injury." Bugosh, 971 A.2d at 1234.

As Justice Saylor noted "several ambiguities and inconsistencies in Pennsylvania's procedure, . . . render [Pennsylvania's] law idiosyncratic." Phillips, 841 A.2d at 1016. For example, to isolate negligence terminology from the jury, the trial judge is "relegated the core decisional aspect of strict liability cases," i.e., risk-utility balancing.[4] Id. The trial court must perform the risk-utility analysis based on the facts most favorable to the plaintiff. Id. at 1017. The jury must resolve questions concerning the product's condition and the plaintiff's factual averments. Id. (citing Azzarello, 391 A.2d at 1025-26). The jury must reach these determinations based on "minimalistic jury instructions," insulating them from negligence concepts. Id. With this division in place, "neither the court nor the jury determines whether the product is in fact unreasonably dangerous or defective." Id. at 1017 (quoting Thomas, Defining "Design Defect" in Pennsylvania: Reconciling Azzarello and the Restatement (Third) of Torts, 71 Temp. L. Rev. 217, 232 (Summer 1998)).

Some Supreme Court justices have suggested Pennsylvania would resolve this tension by adopting the Restatement (Third) of Torts.[5] See Bugosh, 971 A.2d at 1241, U.S. Mineral Prods.

---

[4] The Court in Azzarello, 391 A.2d at 1026, found whether a product is "unreasonably dangerous" is a question of law, whose resolution "depends upon social policy." The court found "[i]t is a judicial function to decide whether, under plaintiff's averment of the facts, recovery would be justified; and only after this judicial determination is made is the cause submitted to the jury to determine whether the facts of the case support the averments of the complaint." Id.

[5] Section 2 of the Third Restatement provides, in relevant part:

§ 2. Categories Of Product Defect

A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate

Co. 898 A.2d at 616 n.2 (concurring opinion); Phillips, 841 A.2d at 1021-23 (concurring opinion). They have reasoned that "adoption of the Restatement's closely reasoned and balanced approach, which synthesizes the body of products liability law into a readily accessible formulation based on the accumulated wisdom from thirty years of experience represents the clearest path to reconciling the difficulties persisting in Pennsylvania law, while enhancing fairness and efficacy in the liability scheme." Phillips, 841 A.2d at 1021 (concurring opinion). In addition, the Court of Appeals for the Third Circuit has predicted Pennsylvania will adopt the Third Restatement. Berrier, 563 F.3d at 57.

Nevertheless, the Supreme Court has not yet resolved the issue, see Bugosh, 971 A.2d at 1229, and the General Assembly has not addressed it. Issues of "complicated factfinding and . . . debatable social judgment are not wisely required of courts unless for some reason resort cannot be had to the legislative process, with its preferable forum for comprehensive investigations and

---

instructions or warnings. A product:

(a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;

(b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;

(c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

Restatement (Third) of Torts: Products Liability, § 2.

judgments of social value." Pegram v. Herdrick, 530 U.S. 211, 221 (2000); see also Excavation Technologies, Inc. v. Columbia Gas Co. of Pa., 936 A.2d 111, 121 (Pa. Super. Ct. 2007) (discussing whether utility companies should be exposed to liability for economic losses and noting there is "reluctance to judicially expand tort liability on public policy grounds as such is properly the role of the legislature"). The legislature is better able to weigh the societal costs and to set limits on tort claims. See Wapner v. Somers, 630 A.2d 885, 886 (Pa. 1993) (discussing the court's reluctance to judicially expand tort liability). Therefore, because the issue involves complicated social and economic issues, requiring investigations and social value judgments, the legislature is better able to address whether Pennsylvania should adopt the Third Restatement, or an alternate scheme, for strict liability cases. See Pegram, 530 U.S. at 121; Wapner, 630 A.2d at 886.

      Accordingly, I decline Sear's suggestion that I preclude the jury from answering whether McGonigal's alteration to the product was reasonably foreseeable to Sears. Under either the existing law, or the Third Restatement, the substantial change jury instruction is appropriate. First, it embodies a permissible interpretation of current Pennsylvania law. See U.S. Minerals Prods. Co., 898 at 601 n.10 (Pennsylvania law maintains limited exceptions to the preclusion of negligence concepts in strict liability law). Second, under the Third Restatement, a product is defective "when the foreseeable risks of harm posed by the product could have been reduced or avoided." See Restatement (Third) of Torts: Products Liability, § 2.

      An appropriate Order follows.